**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Skynet Corporation
d/b/a ZeroBrokerFees.com


        v.                                    Civil No. 06-cv-218-JM


Arthur Slattery, Chairman,
New Hampshire Real Estate
Commission, et al.


                        **O R D E R**


        Plaintiff Skynet Corporation ("Skynet") brought this action
pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 & 2202
(document no. 1) against the individual members of the New
Hampshire Real Estate Commission ("REC") and New Hampshire
Attorney General Kelly A. Ayotte (collectively "defendants"), in
their official capacities, seeking declaratory and injunctive
relief.  Plaintiff challenges the constitutionality of certain
provisions of the New Hampshire Real Estate Practice Act, N.H.
Rev. Stat. Ann. ("RSA") 331-A, et seq. ("REPA").  Defendants have
moved to dismiss (document nos. 14, 17 & 20) alleging that (1)
plaintiff failed to exhaust administrative remedies prior to
bringing suit, (2) plaintiff lacks standing to bring this action,
(3) the matter is not ripe for judicial review, and (4) this

Court should abstain from acting on the complaint pending resolution of a separate matter currently pending before the REC. Plaintiff objects (document nos. 15, 18 & 21).

### Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the facts alleged in the complaint as true and determines whether "relief could be granted under any set of facts that could be proved consistent with the allegations." Lalonde v. Textron, Inc., 369 F.3d 1, 6 (1st Cir. 2004) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). The Court draws all reasonable inferences from the facts alleged in the plaintiff's favor. Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal of the complaint is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

A court adjudicating a motion to dismiss under Rule 12(b)(6) must consider the notice pleading requirements of Fed. R. Civ. P. 8(a)(2). Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004). Under Rule 8(a)(2), a complaint

need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  The court eschews "any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." <u>Educadores</u>, 367 F.3d at 68 (quoting <u>Chongris v. Bd. of Appeals</u>, 811 F.2d 36, 37 (1st Cir.), <u>cert. denied</u>, 483 U.S. 1021 (1987)).

When ruling on a 12(b)(6) motion, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken."  <u>Nollet v. Justices of the Trial Court</u>, 83 F. Supp. 2d 204, 208 (D.Mass.), aff'd, 248 F.3d 1127 (1st Cir. 2000) (unpublished opinion); C. Wright & A. Miller, <u>Federal Practice and Procedure Civil 2d</u> §1357 (noting that in evaluating a Rule 12(b)(6) motion, the court principally considers the allegations in the complaint but may also take into account matters of public record as well as exhibits attached to the complaint).  Applying this standard, the facts pertinent to the instant motion are discussed below.

<u>Background</u>

I.   <u>Skynet and ZeroBrokerFees.com</u>

Skynet is a Massachusetts company with its principal place of business in Beverly, Massachusetts.  Skynet publishes and operates ZeroBrokerFees.com ("ZBF"), an internet site that lists advertisements for properties for sale throughout the United States, including New Hampshire.  Neither ZBF nor any of its officers or employees act or hold themselves out as brokers or real estate agents with respect to any of the properties advertised on the website.  In fact, none of the officers or employees of ZBF are licensed real estate brokers or salespeople in any jurisdiction.  The employees and officers of ZBF do not become involved in the individual sales of any of the properties advertised on the ZBF site.  Neither ZBF, Skynet nor any employees or agents of ZBF or Skynet collect any commission from the sale of any of the properties advertised on the ZBF site.  In order to list a property for sale on the ZBF site, a seller must pay a fee to ZBF in advance.  The fee depends on the size and features of the particular advertisement, but does not in any way depend on the success of the sale or the amount of the sale price if the sale is completed.

II.  <u>REPA</u>

REPA was enacted for the dual purpose of (1) regulating "the practice of real estate brokers and salespersons in order to ensure that they meet and maintain minimum standards which promote public understanding and confidence in the business of real estate brokerage;" and (2) prohibiting and prosecuting any person who acts as a real estate broker or real estate salesperson without a license, or who fails to comply with REPA's requirements for such practice.  <u>See</u> RSA 331–A:1 & 331–A:3.  The statute provides for the establishment of the REC and the REC's rulemaking authority.  REPA further defines what a real estate broker or salesperson is and what activities, when they occur in New Hampshire, must be performed by a broker or salesperson licensed by the REC.  Relevant to plaintiff's constitutional challenge, plaintiff identifies the following provisions of RSA 331–A:2(III), which govern what activities constitute the actions of a broker:

> "Broker" means any person acting for another on
> commission or for other compensation, for the
> promise of such commission or other compensation,
> or any person licensed under this chapter who:
> (d) Lists, offers, attempts or agrees to list real
> estate for sale, lease or exchange.
> . . .

> (h) Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, purchase, rental or leasing of real estate.
> . . .
> (j) Engages in the business of charging an advance fee in connection with any contract whereby the person undertakes to promote the sale or lease of real estate, through its listing in a publication or data base issued for such purpose, through referral of information concerning such real estate to brokers, or both,

Plaintiff further challenges the constitutionality of the provision of REPA which sets out the penalties attached to publishing information about properties for sale in New Hampshire without a license as follows: "Any person acting as a real estate broker or real estate salesperson, without a license, shall be guilty of a class A misdemeanor if a natural person, or guilty of a felony if any other person."  RSA 331–A:34.

The plaintiff reads these statutes on their face to prohibit a number of ZBF's activities.  Specifically, plaintiff alleges that ZBF engages in: listing real estate properties for sale on the website, accepting an advance fee for the advertisement, and providing a means by which prospective buyers of property can be directed to sellers, all of which are prohibited by nonlicensed persons under REPA.

6

Plaintiff alleges that these prohibitions and penalties violate its First Amendment right to free speech both facially and as applied to plaintiff and act as a prior restraint on plaintiff's exercise of its First Amendment rights.  Plaintiff further alleges that the unconstitutional burden placed on its speech is based on content, viewpoint, and status, in that ZBF advocates conducting real estate transactions without using real estate brokers, and that the REC has an interest in suppressing that viewpoint and access to services that aid those who seek to sell their property without using a real estate broker.

III. <u>The REC's Action Against ISoldMyHouse.com</u>[1]

The REC alleges that an action currently before the REC for an administrative hearing on whether or not a website advertising company has violated the prohibitions of REPA may result in the full or partial resolution of the issues presented here by ZBF. ISoldMyHouse.com ("ISMH") is a company that, like ZBF, is engaged in the business of selling advertising space on a website to people selling real estate in New England, including properties

---

[1]Ed Williams, a principal of ZBF, was formerly the general manager at ISMH.  Williams was terminated from ISMH in January of 2005.  Williams was initially personally in the REC proceedings against ISMH, but was dismissed from that proceeding after he testified that he had not worked at ISMH since the end of 2004.

in New Hampshire, and offering advice on conducting real estate transactions without the involvement of a broker.[2]

A complaint against ISMH was initiated by the New Hampshire Association of Realtors.  The REC conducted an investigation of ISMH and found a reasonable basis to believe that an adjudicatory disciplinary proceeding should take place.  Accordingly, a formal complaint against ISMH is currently pending an adjudicatory hearing before the REC's hearing board.  Several of the specific charges being pressed against ISMH are that ISMH engaged in activities REPA prohibits for those who are not real estate brokers licensed by the REC.  Significant for purposes of the instant matter, ZBF engages in very similar business activities as ISMH.  Specifically, both ISMH and ZBF engage in operating a website that lists property for sale in New Hampshire, and both ISMH and ZBF charge an advance fee for listing an advertisement on the website.  The REC has not yet made a determination as to whether or not ISMH has violated the REPA and therefore, had not,

_____

[2]ISMH, unlike ZBF, has participated in other aspects of the real estate transactions of its customer and has a financial interest in some of the sales, including the mortgages, of the properties advertised on its website.  ISMH also engages in giving advice regarding specific transactions to buyers and sellers, and holds itself out as offering services defined under REPA as broker services, but that purport to save customers money by eliminating brokers' fees from the real estate transaction.

at the time of filing in this matter, invoked any criminal or civil action against ISMH.[3]

Discussion

Defendants seek dismissal of the complaint in this matter. As previously stated, the defendants have raised four arguments in support of the relief they seek.  I will address each argument in turn.

I.   Exhaustion

Defendants assert that the plaintiff must exhaust those administrative remedies available by petitioning the REC prior to bringing a claim in this Court.  Defendants contend REC regulations require or allow the plaintiff to have petitioned the REC for a declaratory ruling as to whether or not plaintiff's activities run afoul of the prohibitions set out in REPA.  See N.H. Code Admin. Reg. Rea 201.08.  Defendants argue that requiring the plaintiff to exhaust administrative remedies might result in the REC making a determination that the REPA prohibitions in question here do not apply to the activities of ZBF, thereby obviating plaintiff's constitutional challenge.

---

[3]Attached to the pleadings in this case is a letter from counsel for ISMH to the REC seeking a stay of the proceedings against ISMH pending resolution of the instant action before this Court.

Suits brought pursuant to 42 U.S.C. § 1983, as a general rule, do not require exhaustion of administrative remedies before they may be filed.  <u>Jones v. Bock</u>, 127 S.Ct. 910, 919 ___ U.S. ___ (2007) (citing <u>Patsy v. Bd. of Regents</u>, 457 U.S. 496, 501, 516 (1982)); <u>Steffel v. Thompson</u>, 415 U.S. 452, 472-73 (1974); <u>Borges Colon v. Roman-Abreu, 438 F.3d 1, 19</u> (1st Cir. 2006). Even where, as here, the plaintiff has an option to initiate a state proceeding, exhaustion of that remedy is not a prerequisite to filing a § 1983 action in the federal court.  <u>Patsy</u>, 457 U.S. at 516; <u>see</u> <u>Kercado-Melendez v. Aponte-Roque</u>, 829 F.2d 255, 261 (1st Cir. 1987), <u>cert. denied</u>, <u>Aponte Roque v. Kercado-Melendez</u>, 486 U.S. 1044 (1988); <u>Murphy v. City of Manchester</u>, 70 F. Supp. 2d 62, 67 (D.N.H. 1999).  I therefore reject this basis for dismissing the instant suit.

II.  <u>Standing and Ripeness</u>

Defendants next allege that plaintiff lacks standing to bring this action because, as no action has been taken or threatened against ZBF by the REC, plaintiff has not asserted an actual or imminent injury that would create the case or controversy required to establish federal court standing. Plaintiff counters that it has been injured by the chilling

effect of the REPA prohibitions, and that it has a rational fear of future prosecution for its ongoing activities that violate the provisions of REPA as written.

Article III standing is a constitutional precondition to a federal court's jurisdiction over a case.  Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 44 (1st Cir. 2005) (citing Osediacz v. City of Cranston, 414 F.3d 136, 137 (1st Cir. 2005)).  The burden of establishing standing lies with the party invoking federal jurisdiction.  Wine & Spirits, 418 F.3d at 44. In order to establish standing, the plaintiff must show that: (1) it has personally suffered some actual or threatened injury, (2) the injury can be fairly traced to the challenged conduct, and (3) the injury would likely be redressed by a favorable decision in the pending action.  Id. (citing R.I. Ass'n of Realtors v. Whitehouse, 199 F.3d 26, 30 (1st Cir. 1999).

Here, plaintiff alleges that REPA's prohibition of the activities specified in §§ 331-A:2(III)(d), (h) & (j) have already wrought an injury on the plaintiff, by subjecting ZBF and Skynet to the potential of criminal and civil penalties, and also by actually chilling ZBF's desired level of advertising activities in New Hampshire.  Plaintiff asserts a First Amendment

11

interest in free speech implicated by the REPA's restrictions on certain of its advertising activities on the ZBF website.

Plaintiff contends that its current and ongoing activities are in violation of the plain meaning the statute, and that its activities subject it to the possibility of civil penalties and criminal prosecution, or to the requirement that it undergo the burdensome, expensive, and time-consuming process of becoming a real estate broker licensed by the New Hampshire REC in order to continue its activities without the threat of prosecution.

Defendant counters that the subjective fear of potential future penalties is insufficient to establish the actual or imminent harm to a specific, legally protected interest which standing requires.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (concrete injury to a particular legal interest, not a hypothetical injury or problem, required for standing). Defendant claims that as plaintiff has not been prosecuted or threatened with prosecution by the REC, and further that the REC has not yet expressed an opinion as to whether or not ZBF's activities are prohibited by REPA, plaintiff lacks a concrete injury in fact.

Advertising is a form of commercial speech which is entitled to some measure of First Amendment protection.  United States v. Edge Broad Co., 509 U.S. 418, 426 (1993).  "[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."  N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996).

While a subjective or irrational fear of prosecution would not suffice to confer standing on the plaintiff, the existence of a credible threat that the challenged law will be enforced does suffice.  Mangual v. Rotger-Sabat, 317 F.3d 45, 57 (1st Cir. 2003) (citations omitted).  In order to demonstrate that it faces a credible threat of prosecution, the First Amendment plaintiff must meet an evidentiary bar that is "extremely low."  Id. (citing N.H. Right to Life, 99 F.3d at 15 ("[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence.").  The plaintiff further claims that it does have an objectively reasonable fear of prosecution that is sufficient to establish standing based on the REC's current

prosecution of ISMH for engaging in practices similar or
identical to ZBF's business activities.  In the First Amendment
context, plaintiff can also allege an actual injury for purposes
of establishing standing when plaintiff is chilled from
exercising its right to free expression, or forgoes expression in
order to avoid enforcement consequences.  <u>N.H. Right to Life</u>, 99
F.3d at 13 (citing <u>Meese v. Keene</u>, 481 U.S. 465, 473 (1987)).  A
plaintiff need not wait to be prosecuted, or to have any action
taken against it, in order to obtain standing to bring a
constitutional challenge to the statute.  The plaintiff must
simply intend to engage in proscribed conduct, or be chilled from
engaging in the proscribed conduct.  <u>Mangual</u>, 317 F.3d at 56-57
(citations omitted).

　　　Plaintiff here has specifically alleged that it is engaging
in conduct that is proscribed by the REPA and intends to continue
to do so.  Further, plaintiff alleges that it has been chilled in
exercising its First Amendment rights in that, while plaintiff
continues to engage in some proscribed activities in New
Hampshire, it has limited its business activities in New
Hampshire with the specific intention of reducing the likelihood
of prosecution under REPA.  I find that the existence of an

ongoing and protracted administrative proceedings that may result in criminal or civil sanctions, against an organization with marked similarities to ZBF, that is at least in part due to activities in which ZBF also engages, produces a credible threat of prosecution sufficient for purposes of establishing standing. It is also worth noting that the defendants have not at any time indicated that they do not intend to prosecute ZBF or bring action against ZBF in the future, or that they agree that REPA is unconstitutional, or that ZBF's activities do not violate the prohibitions of REPA, but instead have stated that they feel it is necessary to keep that option available to them.  The fact that none of those things have occurred "yet" does not counter the credible threat alleged by plaintiff.

Further, the injury is fairly traceable to the existence of the statute and the potential for its enforcement.  Plaintiff has sought this Court's declaratory judgment that the provisions of REPA prohibiting and penalizing ZBF's activities are unconstitutional.  Accordingly, a favorable result in this Court would clearly redress the actual and threatened injuries alleged. Consequently, I find that plaintiff has standing to prosecute its constitutional claims in this Court.

"Although a plaintiff may have standing to make a pre-enforcement challenge to a statue, . . . a federal court nonetheless lacks jurisdiction to decide a controversy that is not ripe for judicial review.  The doctrine of ripeness 'asks whether an injury that has not yet happened is sufficiently likely to happen' to warrant judicial review."  <u>Ginsberg v. Ayotte</u>, No. Civ. 05-CV-193-JM, 2005 WL 3454313, *5 (D.N.H. Dec. 15, 2005) (citing <u>Gun Owners' Action League, Inc. v. Swift</u>, 284 F.3d 198, 205 (1st Cir.), <u>cert. denied</u>, 537 U.S. 827 (2002) (further citations omitted)).  To determine an issue of ripeness, a court must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  <u>Mangual</u>, 317 F.3d at 59 (citing <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148 (1967)).

The inquiry into fitness, described by the First Circuit as "both a constitutional and a prudential" one.  <u>Mangual</u>, 317 F.3d at 59.  The fitness inquiry first seeks to determine whether it is premature for the federal court to entangle itself in a constitutional disagreement that may still be abstract.  <u>Id.</u>  The inquiry, out of concern for judicial restraint, then turns to whether a decision would result in the unnecessary resolution of

16

constitutional issues.  <u>Id.</u>  A plaintiff who intends to continue

the activities that place it at risk of prosecution, or who has

already been chilled in the exercise of its First Amendment

rights, is not required to wait for prosecution in order to

present a controversy ripe for consideration.  <u>Id.</u> at 60.

Further, a plaintiff who has already been chilled in its

expression as a result of the credible threat of enforcement of

the statute in question has alleged a controversy ripe for

consideration.  <u>Id.</u>  As the chilling effect in this case has

already come to pass according to the plaintiff's allegations,

and as the plaintiff has also pointed to a credible threat of

prosecution based on the prosecution of ISMH, I find that this

matter is ripe for judicial determination.

III. <u>Abstention</u>

     Defendants' final argument for dismissal of the complaint is

that, even if this Court could properly exercise its jurisdiction

over the matter, it should abstain.  Defendants do not assert any

particular doctrine upon which they rely, but simply assert

generally that litigating this case would interfere with an

administrative scheme created under New Hampshire law that

provides for state judicial review, where challenges like those

plaintiff has made are most appropriately resolved.  Defendants
assert in particular that because the ISMH proceeding is
currently pending before the REC, and it involves some of the
same provisions of REPA that are challenged here, abstention
would allow the REC to resolve the ISMH matter without federal
interference.  Plaintiff could then simply file a petition for
Declaratory Ruling with the REC.[4]

   Plaintiff counters that under the doctrine of Burford v. Sun
Oil Co., 319 U.S. 315, 338-39 (1943), abstention is not warranted
where the Court has jurisdiction to entertain an action, unless
the matter involves complex, policy-laden issues of unclear state
law that or where this Court's consideration of the matter before
it would interfere with the state's regulatory process.
Plaintiff further argues that abstention is not warranted in a
case presenting a facial challenge to a statute, particularly in
the First Amendment context.  See City of Houston, Tex. v. Hill,
482 U.S. 451, 467-68 (1987) (citing Zwickler v. Koota, 389 U.S.
241, 252 (1967), for the proposition that forcing a plaintiff who

---

   [4]Notably, the defendants do not state whether or not the
particular constitutional challenge raised by plaintiff here has
been raised in the ISMH proceedings, or whether resolution of the
ISMH matter before the REC will necessarily, or even probably,
resolve plaintiff's claims here.

has initiated federal action to endure delay of state court
proceedings may exacerbate the first amendment violation
alleged).

The abstention doctrines represent exceptions, applicable in
particular circumstances, to the general rule that a federal
court must exercise its jurisdiction when that jurisdiction has
been properly invoked.  <u>Colo. River Water Conservation Dist. v.</u>
<u>United States</u>, 424 U.S. 800, 817 (1976) ("Federal courts have a
"virtually unflagging obligation . . . to exercise the
jurisdiction given them.").  Although not specifically enumerated
by defendant, there are several abstention doctrines that are
relevant to whether this Court should abstain in this case.  I
will consider these seriatim.

A.   <u>Burford Abstention</u>

Under the rule of <u>Burford</u>, abstention is appropriate when
the exercise of jurisdiction by the federal court would result in
the federal court becoming a forum to decide detailed state
regulatory matters in a manner that interferes with the state's
operation of its own regulatory system.  <u>See</u> <u>Bath Mem'l Hosp. v.</u>
<u>Me. Health Care Fin. Comm'n</u>, 853 F.2d 1007, 1012 (1st Cir. 1988);
<u>Pub. Serv. Co. v. Patch</u>, 962 F. Supp. 222, 234 (D.N.H. 1997).

19

The <u>Burford</u> abstention rule requires federal courts to abstain from exercising their jurisdiction, and thereby from interfering with proceedings or orders of state administrative agencies where: "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" or where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 U.S. 350, 354–58, 361 (1989).

Neither prong of the test for abstention is satisfied in this case.  First, this case presents neither a state law claim nor any federal claim that entangles itself with difficult questions of unsettled state law.  Second, while there is the potential for this Court to render a decision in conflict with regulatory policy announced or to be announced by the REC, abstention is not required simply because an administrative process exists, presenting the possibility that such a conflict might arise.  <u>McNeese v. Bd. of Educ.</u>, 373 U.S. 668, 674 (1963). In fact, in a case such as this, where a federal constitutional

challenge is lodged against a state statute, a federal court cannot abstain simply because its ruling might conflict with state law.  <u>See</u> <u>id.</u>

In this case, the Court need not inquire beyond the actual language of the challenged statute in order to determine whether or not the statute is facially unconstitutional.  <u>See</u> <u>Bath Mem'l</u>, 853 F.2d at 1014; <u>Med. Malpractice Joint Underwriting Ass'n v. Pfeiffer</u>, 832 F.2d 240, 244 (1st Cir. 1987) (citing <u>Zablocki v. Redhail</u>, 434 U.S. 374, 380 n.5 (1978) (federal court jurisdiction over a direct challenge to the legality of a state statute under the federal constitution cannot be avoided simply because the issue concerns a coherent state policy, at least where there are no pending or ongoing concurrent state proceedings).  This case does not require the Court to delve into complicated questions, interpretations, or applications of state law, or to pass judgment on a state administrative agency's application of the law.  The jurisdiction of this Court is properly invoked to answer a challenge to the constitutionality of a state statute, and, in doing so, this Court will not unduly intrude into the machinations of any state administrative body.  Accordingly, <u>Burford</u> abstention is inappropriate in the circumstances

21

presented here.  See Fragoso v. Lopez, 991 F.2d 878, 883 (1st
Cir. 1993); Bath Mem'l, 853 F.2d at 1015; Patch, 962 F.Supp. at
235.

B.   Pullman Abstention

Where state law is uncertain, and a pending state court case
might clarify the law and render the federal court's ruling
unnecessary, a federal court may abstain under the doctrine set
forth in R.R. Comm'n v. Pullman Co., 312 U.S. 496, 499-500
(1941).  When considering whether to abstain under Pullman, the
First Circuit has required that a court consider: "(1) whether
there is substantial uncertainty over the meaning of the state
law at issue; and (2) whether a state court's clarification of
the law would obviate the need for a federal constitutional
ruling."  Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71
(1st Cir. 2001); see also Erwin Chemerinsky, Federal Jurisdiction
§ 12.2.1, at 737 (3d ed. 1999).

Defendants have not identified any unclear issue of state
law, as opposed to federal constitutional law, in this dispute.
Instead, defendants here argue that because ISMH's case is
pending before the REC and shares some factual similarity to the
prosecution anticipated by ZBF, that the REC may resolve some of

the issues raised by plaintiff in the ISMH case.  Defendants also argue that this Court should abstain so that plaintiff can bring a petition for a declaratory ruling to the REC to determine whether or not REPA applies to ZBF's activities.  Defendants do not identify any portion of the REPA that requires clarification that should be conducted by the state courts prior to this Court's exercising jurisdiction over the plaintiff's constitutional challenge.  The claim raised here by plaintiff is solely a question of the federal constitutionality of certain provisions of the REPA.  If state law questions are not ambiguous, abstention is inappropriate.  Mangual, 317 F.3d at 63 (citing Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 598 (1976)).

Further, defendants have identified one matter pending before the REC concerning issues similar to those raised here. And while defendants assert that judicial review is available in the ISMH matter in the state courts, they have not demonstrated how review of that matter would resolve plaintiff's constitutional question.  Defendants also have not identified any other matter currently pending before any state court that might, upon state court resolution, obviate the need for a federal court

decision in this matter.  Even in the event that the state courts could eventually rule on one or more of the issues raised here, "[a] federal court should not abstain simply to give a state court the first opportunity to vindicate federal rights." Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 322 (1st Cir. 1992) (citing McNeese, 373 U.S. at 672).  Accordingly, Pullman abstention is not warranted here.

     C.   Younger Abstention

Since the Supreme Court's decision in Younger v. Harris, 401 U.S. 37 (1971), deference a federal court should accord to state institutions has been extended from state criminal courts and proceedings to ongoing civil and administrative proceedings, as long as the proceedings: (1) are judicial in nature; (2) implicate important state interests; and, (3) afford the federal plaintiff adequate opportunity to raise federal constitutional claims and defenses.  See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).  The Younger doctrine does not provide an exception to federal jurisdiction where no state judicial proceedings have commenced.  Pfeiffer, 832 F.3d at 243 (citing Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 238-39 (1984)).  Even assuming that in this instance the available

procedures before the REC are judicial in nature, that they implicate the important state interest in regulating real estate transactions, and that the ability to appeal REC decisions to the state courts provides an adequate opportunity to raise federal constitutional issues, the fact is that no such proceeding is currently pending against the plaintiff in this matter.  While plaintiff has the option to seek a declaratory ruling before the REC which would be appealable to the state courts, the plaintiff chose not to avail itself of that option, and this Court has no obligation to abstain from deciding this matter because plaintiff has another option.

      D.   <u>Colorado River Abstention</u>

     In <u>Colo. River</u>, the Supreme Court identified certain "exceptional circumstances" under which federal courts might abstain from hearing a matter in the interest of judicial administration and economy.  <u>See</u> 424 U.S. at 817.  To decide whether or not the circumstances of a case are sufficiently exceptional to warrant abstention a federal court looks to: (1) whether another forum has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums

obtained jurisdiction: (5) whether federal law or state law controls; (6) whether the state forum will adequately protect the interest of the parties; and (7) whether the federal litigation is contrived or vexatious.  See id.; Rivera-Puig, 983 F.2d at 320-21.

Applying these factors to this case, it is clear that no exceptional circumstances are presented that warrant abstention in this case.  The only action pending concerning ZBF's activities in New Hampshire is this federal action.  There is simply no state action pending against this plaintiff to which this Court should defer.  Further, there is no reason to suppose that this Court is any less convenient than any other New Hampshire forum.  Also, as previously discussed, the questions presented here are purely a matter of federal law, and while this Court has no doubt that the state court is well-equipped to protect the federal constitutional rights of the litigants before it, there is no reason that this Court should abstain simply to give the State court that opportunity.  Federal law will control the outcome of this matter, and this Court can serve as the single forum for all of plaintiff's claims if defendants choose not to bring any state action before the resolution of this

matter.  Finally, there is no basis to find, and defendants do not assert, that the federal litigation in this matter is in any way contrived or vexatious.

I find, therefore, that there are not exceptional circumstances in this case warranting abstention in this matter, and, therefore, I will not decline to exercise this Court's properly invoked jurisdiction.

<u>Motions to Stay Discovery and Quash Subpoena</u>

Defendants have moved to stay the current discovery plan issued by the Court and to have the Court schedule a new scheduling/pretrial conference to amend the discovery plan and timeline for litigating this case (document no. 22).  Defendants have also moved to quash a subpoena in this matter (document no. 24), pending resolution of their motion to dismiss.[5]  Plaintiff did not assent to either motion (document nos. 23 & 25).  Because the motion to dismiss has been denied, these matters are now ripe for consideration.  Accordingly, the parties are directed to submit proposed revised discovery plans and timelines for litigating this case within twenty (20) days of the date of this

---

[5]On March 7, 2007, I issued an endorsed order on the motion to quash staying the deposition in question until the motion to dismiss was ruled upon.

27

Order.  The stay of the deposition that I ordered in response to plaintiff's motion is vacated and the deposition may proceed.

<u>Conclusion</u>

Having considered defendants' arguments concerning exhaustion, standing, ripeness and abstention, I find that none offer a basis for dismissing this action at this time. Accordingly, the motion to dismiss is denied.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:      March 13, 2007

cc:        Charles G. Douglas, III, Esq.
           Steven M. Simpson, Esq.
           Valerie J. Bayham, Esq.
           William H. Mellor, Esq.
           Jason R.L. Major, Esq.
           James William Kennedy, Esq.